**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**SOUTHERN-OWNERS**
**INSURANCE COMPANY,**

    **Plaintiff,**

v.

**ENERGY ARMOR, INC.,**
**BRIAN DITORE, MICHAEL DOTSON,**
**and JOHN DALY,**

    **Defendants.**
_____/

**COMPLAINT FOR DECLARATORY RELIEF**

The Plaintiff, SOUTHERN-OWNERS INSURANCE COMPANY ("SOUTHERN-OWNERS"), by and through its undersigned counsel and pursuant to 28 U.S.C. § 2201 and Chapter 86 of the Florida Statutes, hereby files this action against Defendants, ENERGY ARMOR, INC. ("ENERGY ARMOR"), BRIAN DITORE ("DITORE"), MICHAEL DOTSON ("DOTSON"), and JOHN DALY ("DALY") and would state as follows:

**JURISDICTIONAL ALLEGATIONS**

1. Plaintiff, SOUTHERN-OWNERS, is a Michigan company incorporated in the state of Michigan and organized and existing under the laws of Michigan with its principal place of business in Lansing, Michigan.

2. Defendant, ENERGY ARMOR, is a dissolved Florida company previously incorporated in the state of Florida and organized and existing under the laws of Florida with its principal place of business in Jacksonville, Florida.

3. At all material times, Defendant, DITORE, was the president of ENERGY ARMOR and a citizen of the State of Florida and a resident of Duval County, Florida.

4. At all material times, Defendant, DOTSON, was a citizen of the state of California and a resident of Los Angeles, California.

5. At all material times, Defendant, DALY, was a citizen of the state of Illinois and a resident of Chicago, Illinois.

6. This court has jurisdiction of the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the damages at issue are in excess of $75,000.00 exclusive of interest and costs.

7. The current action is brought pursuant to 28 U.S.C. § 2201 and Chapter 86 of the Florida Statutes and seeks declaratory relief regarding SOUTHERN-OWNERS' rights and obligations under insurance policies issued to ENERGY ARMOR for claims by DALY and DOTSON against ENERGY ARMOR and DITORE.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events out of which the current action arises occurred in this district and the insurance policy was issued in this district. Alternatively, venue is appropriate in this district because ENERGY ARMOR and DITORE are subject to the court's personal jurisdiction in this action.

## **UNDERLYING LAWSUITS**

9. On September 2, 2020, DALY, individually and on behalf of others similarly situated, filed an amended complaint in a lawsuit against ENERGY ARMOR and DITORE in the Northern District of Illinois, case number 1:20-cv-4442, (the "Daly Lawsuit"). A copy of the Amended Complaint in the Daly Lawsuit is attached hereto as Exhibit "A".

10. On January 25, 2021, DOTSON, individually and on behalf of others similarly situated, filed an amended complaint in a lawsuit against ENERGY ARMOR and DITORE in the Superior Court of the State of California, Los Angeles County, case number 20STCV28922 (the "Dotson Lawsuit"; together with the Daly Lawsuit, the "Underlying Lawsuits")). A copy of the Dotson Lawsuit is attached hereto as Exhibit "B".

11. The Underlying Lawsuits allege that ENERGY ARMOR and DITORE manufactured, advertised, distributed, and sold negative ion bracelets (the "Bracelets") throughout the United States which contain Thorium-232, a fact which ENERGY ARMOR and DITORE omitted in their advertisements.

12. The Daly Lawsuit proposes the creation and certification of a class for those persons in the United States who purchased a Bracelet four years before the filing of the Daly Lawsuit and a sub-class for those persons in Illinois who purchased a Bracelet ten years before the filing of the Daly Lawsuit.

13. The Dotson Lawsuit proposes the creation and certification of a class for those who purchased a Bracelet in the United States four years before the filing of the Dotson Lawsuit and a sub-class for those who purchased a Bracelet in California four years before the filing of the Dotson Lawsuit.

14. The Daly Lawsuit and Dotson Lawsuit respectively allege that DALY purchased several Bracelets, with the most recent purchase being on June 17, 2020 and that DOTSON purchased a Bracelet on July 14, 2020.

15. The Underlying Lawsuits allege that DITORE and ENERGY ARMOR engaged in omissions and misrepresentations in their advertisements that the Bracelets they manufacture, advertise, distribute, and sell contain Thorium-232, which emits ionizing radiation.

16. The Underlying Lawsuits assert that ENERGY ARMOR and DITORE'S intentional and deceitful practice of not disclosing that the Bracelets contained Thorium-232: (1) impaired DALY, DOTSON, and the proposed class members' ability to choose the quality and safety of the products they purchase; (2) prevented them from knowing that the Bracelets contained Thorium-232; (3) misled them into buying products they would not have otherwise; and (4) deceived them into paying money they would not have otherwise.

17. As a result, the Underlying Lawsuits allege DALY and DOTSON suffered concrete and particularized injuries and harm, which include lost money, lost time and stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product safety.

18. Based on the forgoing, the Daly Lawsuit asserts claims against ENERGY ARMOR and DITORE for (1) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act due to ENERGY ARMOR and DITORE'S misrepresentations, concealments, suppressions, and omissions of material facts with the intent that DALY rely upon same and (2) unjust enrichment for the retention of the revenue received from DALY, the Class and the Sub-Class due to ENERGY ARMOR and DITORE'S omissions that the Bracelets contain Thorium-232 and emit ionizing radiation.

19. The Dotson Lawsuit asserts claims against ENERGY ARMOR and DITORE for violations of (1) the California False Advertising Act for misrepresentations and omissions about the Bracelets that ENERGY ARMOR and DITORE knew were misleading and were deliberately made in order to deceive DOTSON and the proposed class members into purchasing the Bracelets and (2) the California Unfair Business Practices Act for deceptively omitting the fact that the Bracelets contained Thorium-232 in order to induce DOTSON and the proposed class

members into buying Bracelets knowing that the Bracelets would not confer the benefits DOTSON and the proposed class members expected to receive from the Bracelets.

20. As a result of the alleged conduct of ENERGY ARMOR and DITORE, the Daly Lawsuit seeks: (1) injunctive relief to compel ENERGY ARMOR and DITORE to cease their false advertisement; (2) disgorgement and restitution of revenues derived from false advertisement of the Bracelets; (3) an order requiring ENERGY ARMOR and DITORE at its own cost to notify all members of the proposed classes of its unlawful, unfair, deceptive and unconscionable conduct; (4) actual damages; (5) punitive damages; and (6) costs and attorneys' fees.

21. The Dotson Lawsuit seeks: (1) preliminary and permanent injunctive relief requiring ENERGY ARMOR and DITORE to cease their false advertising; (2) disgorgement and restitution of revenues derived from false advertisement of the Bracelets; (4) an order requiring ENERGY ARMOR and DITORE to immediately cease its unlawful, unfair, and fraudulent business acts and requiring them to correct same; an order requiring ENERGY ARMOR and DITORE to engage in corrective advertising and/or product recalls; (5) actual damages suffered by DOTSON and the class members as applicable or full restitution of amounts paid for the Bracelets by them; (6) punitive damages; (7) any and all statutory enhanced damages; (8) attorney's fees and costs; and (9) pre- and post-judgment interest.

22. SOUTHERN-OWNERS has appointed counsel to defend ENERGY ARMOR and DITORE in the Underlying Lawsuits, but has advised them that there may be no coverage under the Policies and that SOUTHERN-OWNERS may have no obligation to defend or indemnify ENERGY ARMOR and DITORE in the Underlying Lawsuits.

**THE SOUTHERN-OWNERS POLICIES**

23. Southern-Owners insured Energy Armor under multiple consecutive policies covering an effective period from February 8, 2015 through February 8, 2022, policy number 152322-78263073 (collectively the "Policies"). Copies of the Policies for each policy year are attached hereto as Exhibits "C"-"I" respectively.

24. The Policies provide coverage pursuant to the following Insuring Agreement:

> **SECTION I – COVERAGES**
> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.[1]  We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:
>
>   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and
>
>   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.
>
>   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
>   b. This insurance applies to "bodily injury" and "property damage" only if:
>
>   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory".
>
>   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

---

[1] The Policy in effect for the period of February 8, 2021 through February 8, 2022 inserts an additional sentence here which states: "However, we will have not duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply."

6

  **(3)** Prior to the policy period, no insured listed under paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" has occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

 **c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.[2]

 **d.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

25. The Policies contains the following relevant exclusions:

 **2. EXCLUSIONS**

 This insurance does not apply to:

 **a. Expected or Intended Injury**

---

[2] The Policy in effect for the period of February 8, 2021 through February 8, 2022 inserts an additional paragraph before the above referenced paragraph c. which provides:
 **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

7

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

**f. Pollution**

    **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

      **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

        **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced y or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

        **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that         premises, site or location and such premises, site or location is  not and never was owned or occupied by, or rented or loaned  to, any insured other  than that additional insured; or

        **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire".

      **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

      **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        **(i)** Any insured; or

      **(ii)** Any person or organization for whom you may be legally responsible;

  **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store ore receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or[3]

  **(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**(2)** Any loss, cost or expense arising out of any:

---

[3] The word "or" is deleted from the February 8, 2021 – February 8, 2022 Policy.

9

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effect of "pollutants".

However, this paragraph does not apply to liability for damages because of covered "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

* * *

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

* * *

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    **(1)** "Your product";

    **(2)** "Your work"; or

    **(3)** "impaired property"

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

26. The Policies contain the following relevant definitions: [4]

    **SECTION V – DEFINITIONS**

\* \* \*

    **4.** "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.[5]

\* \* \*

    **9.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

      **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      **b.** You have failed to fulfill the terms of a contract or agreement.

    If such property can be restored to use by:

      **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

      **b.** Your fulfilling the terms of the contract or agreement.

\* \* \*

    **14.** "Occurrence" means an accident, including continuous repeated exposure to substantially the same general harmful conditions.

\* \* \*

---

[4] The numbering in the February 8, 2021 – February 8, 2022 Policy is slightly different and the referenced definitions herein correspond to definition numbers 3., 8., 13., 15., 17., and 21 in the February 8, 2021 – February 8, 2022 Policy.
[5] "Bodily injury" is defined in the February 8, 2021 – February 8, 2022 Policy as:
    **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**16.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

* * *

**18.** "Property damage" means:
   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**26.** "Your product":

   **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

   **(c)** A person or organization whose business or assets you have acquired; and
   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:
   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

* * *

## **COUNT I – DECLARATORY RELIEF**

27. SOUTHERN-OWNERS realleges and incorporates Paragraphs 1 through 26 as if stated verbatim herein.

28. SOUTHERN-OWNERS has brought this count to have this Court declare the rights of the parties and seeks a ruling that SOUTHERN-OWNERS has no duty to defend and/or indemnify ENERGY ARMOR and DITORE in the Daly Lawsuit and Dotson Lawsuit.

29. There is no coverage under the Policies with respect to the claims against ENERGY ARMOR and DITORE by DALY and DOTSON.

30. The allegations of the Daly Lawsuit and the Dotson Lawsuit fail to trigger the insuring agreement of the Policies.

31. The Policies provide coverage only for those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies.

32. The Policies apply to "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an "occurrence".

33. The Policies only provide coverage for "bodily injury" or "property damage" which occurs during the policy period and do not apply if the "bodily injury" or "property damage" occurred, in whole or in part prior to the policy period, including any continuation, change or resumption of such "bodily injury" or "property damage".

34. SOUTHERN-OWNERS has no duty to defend or indemnify ENERGY ARMOR and/or DITORE in the Daly Lawsuit and Dotson Lawsuit as the allegations in the Daly Lawsuit and Dotson Lawsuit fail to allege "bodily injury" or "property damage" caused by an "occurrence".

35. Furthermore, SOUTHERN-OWNERS has no duty to defend or indemnify ENERGY ARMOR and/or DITORE in the Underlying Lawsuits because attorney's fees, injunctive relief, punitive damages, enhanced damages, restitution, disgorgement, economic harm and damages, unjust enrichment, and equitable relief do not constitute damages because of "bodily injury" or "property damage" caused by an "occurrence".

36. Additionally, actions such as nondisclosure and misrepresentation do not constitute an "occurrence" capable of causing "property damage" or "bodily injury".

37. Punitive damages are uninsurable under Florida law.

38. To the extent that the allegations of the Daly Lawsuit and Dotson Lawsuit can be construed to allege damages because of "bodily injury" or "property damage" which occurred during the policy period and is caused by an "occurrence", SOUTHERN-OWNERS has no duty to defend or indemnify ENERGY ARMOR and/or DITORE in the Underlying Lawsuits as the allegations in the Daly Lawsuit and Dotson Lawsuit fall squarely within one or more of the following exclusions:

    (1) Expected or Intended Injury;

    (2) Pollution;

    (3) Damage to Your Product;

    (4) Damage to Impaired Property or Property Not Physically Injured; and

    (5) Recall of Products, Work or Impaired Property.

39. Where there is no duty to defend, there can be no duty to indemnify. Accordingly, SOUTHERN-OWNERS has no obligation to pay any portion of the claims sought by DALY and DOTSON against ENERGY ARMOR and DITORE in the Daly Lawsuit and Dotson Lawsuit.

40. It is SOUTHERN-OWNERS position that there is no coverage, including a duty to defend or indemnify, under the Policies for the Underlying Lawsuits.

41. The parties dispute the interpretation of the Policies and whether SOUTHERN-OWNERS has a duty to provide coverage, including a duty to defend or indemnify, ENERGY ARMOR and DITORE for the claims and Underlying Lawsuits by DALY and DOTSON.

42. As the parties are in dispute as to the coverage afforded under the Policies, this action is appropriate for determination by the Court.

WHEREFORE, SOUTHERN-OWNERS hereby requests that this Court enter an Order declaring that the Policies do not provide coverage for the claims against ENERGY ARMOR and DITORE by DALY and DOTSON and that SOUTHERN-OWNERS has no duty to defend or indemnify ENERGY ARMOR and DITORE in the Daly Lawsuit and Dotson Lawsuit or for any claims set forth therein and any other relief which this Court deems just and appropriate.

Dated: April 6, 2021

Respectfully submitted,

/s/Robin P. Keener
Robin P. Keener, Esquire
Florida Bar No.: 0597945
rkeener@stolerrussell.com
Erik R. Lundberg, Esquire
Florida Bar No.: 1018318
elundberg@stolerrussell.com
Stoler Russell Keener Verona P.A.
One Tampa City Center, Suite 3100
201 North Franklin Street
Tampa, FL 33602
(813) 609-3200